IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KANWALJIT SINGH HUNDAL,<br><br>     Petitioner,<br><br>  vs.<br><br>JEFFREY BEARD, Secretary, California<br>Department of Corrections and<br>Rehabilitation,<br><br>     Respondent. | No. 2:11-cv-1571-JKS<br><br>MEMORANDUM DECISION |

Kanwaljit Singh Hundal, a state prisoner represented by counsel, filed a Petition for

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  At the time he filed his Petition,

Hundal was in the custody of the California Department of Corrections and Rehabilitation and

incarcerated at Chuckawalla Valley State Prison.  It appears that he has been released on

supervised parole, as a search on the Department of Corrections and Rehabilitation's inmate

locator website (http://inmatelocator.cdcr.ca.gov/, Inmate No. F59716) has no record of him.

Respondent has answered, and Hundal has replied.  As of March 5, 2012, the date his counsel

filed the Traverse, Hundal was still incarcerated at Chuckawalla.  He has not filed a change of

address with this Court.

## I.  BACKGROUND/PRIOR PROCEEDINGS

On June 2, 2006, Hundal was charged in San Joaquin County Court with 13 counts of

committing lewd acts on his daughter, M., when she was 10 years old, in violation of California

Penal Code § 288(a).

On direct appeal, the California Court of Appeal summarized the facts and allegations

underlying Hundal's indictment:

> In 2000, [Hundal] and his wife S. separated after 11 years of marriage.  In 2001, the couple obtained a divorce decree, under which they shared custody of their three children, M., her older brother P. and younger brother A.
>
> In May 2006, when M. was 10 years old, she and her brothers were residing half time with each parent, switching residences every Wednesday.
>
> On Saturday, May 6, 2006, [Hundal] took his three children to Wal-Mart.  He had just joined a fitness center and he wanted to buy M. a bathing suit, so she could swim there.
>
> [Hundal] took M. and A. into the store, while P. waited in the car.  [Hundal] bought his daughter a pink two-piece bathing suit, two pairs of underwear and two bras.  They then drove back to [Hundal's] residence.
>
> M. went into the bathroom and tried on her underwear and swimsuit to see if they fit, which they did.  However, [Hundal] told her she had to try on the items again, so he could check them.  M. protested, but her father insisted, so she did as she was told.  This was the first time M. had ever purchased a bra. [Hundal] had never checked his daughter's underwear purchases before.
>
> M. went back into the bathroom and put on a pair of underpants and a bra. [Hundal] came into the bathroom and started "checking it."  He placed his hand on her private area and began moving it in a circular motion.  He was feeling, rubbing and inserting his fingers into her private spot.  He touched her bra and under her bra.  M. told him to stop, but he ignored her.  He then told her to try on the other pair of underpants and bra.
>
> After M. changed into the second pair of underwear, [Hundal] returned to the bathroom, where he inserted his fingers into her private spot, put his hand under her bra, and "probably" touched her butt.
>
> [Hundal] then told M. to try on her bathing suit.  He left the bathroom and M. tried on the bathing suit again, because her father thought the fit was too tight.  Defendant returned and while "checking" the fit, he again touched her bottom with his hand and inserted his fingers in her private spot.
>
> During this sequence of events, seven-year old A. opened the bathroom door to ask his father a question.  [Hundal] slammed the door shut, but not before A. saw him in the mirror touching M. in the left chest and groin areas, under her bathing suit.
>
> Around 5:30 p.m., [Hundal] took his children to temple, after which they went to the fitness center.  When all three children were in the pool, [Hundal] instructed M. to allow him to hold her and "hop" in the pool.  Although she said no, [Hundal] grabbed her and made him hop with him.  M. felt her father's private area rubbing up against her butt, or backside.  She complained to her little brother A., who told her to try to stay away from him.
>
> Afterwards, M. and her brothers went into the spa with their father.  In the spa, [Hundal] instructed M. to lie on top of him.  When M. refused, [Hundal] again grabbed

her and pulled her toward him.  As he held her stomach, M. could feel him trying to get his private area as close to her butt as he could.  M. felt frightened, feeling that it was something a father should not be doing with a daughter.

That night, [Hundal] made M. sleep with him, and draped his legs around hers in the bed.  Again she felt his private area close to hers and felt frightened.

The next day, Sunday, [Hundal] took his children to temple and back to the fitness center.  [Hundal] again made M. hop with him in the pool; as they jumped, she felt his private area touching her butt or backside.

On Monday morning, after [Hundal] left for work, M. called her mother S. and said she had something important to tell her.  When S. arrived, M. explained what [Hundal] had done to her, and started to cry.  S. was "shocked and surprised," and called the police.  M. eventually gave a videotaped interview at the Child Advocacy Center . . . .

On August 3, 2006, Hundal retained Harjot Walia as his counsel.  The following day, Walia herself was charged by the San Mateo County Court with a misdemeanor violation of Health and Safety Code § 11550 for the use of a controlled substance.  She subsequently retained Anthony Lowenstein to represent her in her own criminal case.  On or about August 19, 2006, Walia also requested that Lowenstein act as her co-counsel and "second chair" in the Hundal case.  Hundal executed a written retainer agreement authorizing the arrangement, but was apparently not informed that Lowenstein was representing Walia on her own charges.

On October 6, 2006, Lowenstein appeared on behalf of Walia, and Walia entered a plea for deferred entry of judgment with proceedings suspended for 18 months.  One of the conditions of her probation was that she was not to use alcohol or drugs.  On November 14, 2006, Walia again appeared before the San Mateo County Court and substituted herself as her attorney in place of Lowenstein.

Trial in the Hundal case was set for November 27, 2006.  At that time, the defense moved for a continuance based on the unavailability of a defense expert and a conflicting trial for defense co-counsel Lowenstein.  The prosecution opposed the motion, citing the ages of the children involved and the fact that the expert had been named more than two months prior to the

trial date.  The court denied the motion, stating that they would have to find a schedule to accommodate the expert witness and that Walia would have to manage the case by herself in Lowenstein's absence.  The judge also directed Walia to issue a subpoena for the expert witness. Court was then adjourned until November 29, 2006, when jury selection would begin.

On November 29, 2006, Lowenstein appeared at trial, but Walia renewed her motion to continue on the basis of the defense expert's unavailability and the fact that Lowenstein would be unavailable for the remainder of the week.  In support of her motion, she included declarations from herself, the expert witness, and Lowenstein.

The court addressed the dynamic between the two co-counsel.  The court notified them that one would be lead lawyer in the case and that both could not argue motions.  Lowenstein averred that Walia was "true counsel" and the court found no issue with Walia continuing with jury selection in Lowenstein's absence.  Walia objected, claiming that she needed Lowenstein's experience in picking a jury.  According to Lowenstein, defense counsel had divided trial preparation and Walia was "completely unprepared" to handle the beginning of the case alone and that "[r]equiring the defendant to go forth with the trial effectively deprives him of a right to a fair trial by having a full defense by prepared counsel."  Walia agreed, stating that she was "completely unprepared to go forward at this time."  The court again rejected the continuance on the basis of Lowenstein's absence, stating, "If I thought there was any real danger to a defendant not getting a fair trial or the People, and I don't think so, we can go forward and both sides can get a fair trial."

The court also discussed whether the expert's testimony would even be admissible, as the prosecution had filed motions in limine to exclude his testimony.  The court ultimately

determined that the defense could call their expert, and, while he could testify about the parental alienation syndrome,[1] he could not testify to the facts or circumstances of the case or to anyone's credibility.

The prosecution also moved to exclude evidence that the victim's mother had made prior allegations that her daughter had been molested by another person in Hundal's family. The defense wanted to introduce a letter from the victim's mother to impeach the mother's credibility and as evidence of parental coaching and false allegations. In the letter from the victim's mother to Hundal ("Letter No. 1"), written six years before the alleged abuse at issue in this case occurred and when the victim was four years old, the mother claims that a member of Hundal's family tried to inappropriately touch the victim. Hundal sent the letter to the attorney who was representing him in the divorce and custody proceedings by another letter ("Letter No. 2") that states that, "I talked to my daughter . . . and told her what her mother has written to me. She said to me in very frank and clear words that my brother-in-law . . . has never done anything to her . . . . She has said to me that it is her mother . . . who is telling such things to her, in other words tutoring her." The court ruled that Letter No. 1 was inadmissible under California Evidence Code § 352, which grants courts discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue

---

[1]      The term parental alienation syndrom refers to what some health care professionals call a disorder that arises primarily in the context of child-custody disputes in which a child belittles and insults one parent without justification, resulting, in part, from the indoctrination by the other parent. *See* Michele A. Adams, *Framing Contests in Child Custody Disputes: Parental Alienation Syndrome, Child Abuse, Gender, and Fathers' Rights*, 40 FAM. L.Q. 315, 315-16 (2006).

consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

According to Walia, the mother had repeated the allegations to Dr. Howells, a clinical psychologist at the University of the Pacific.  Walia therefore asked the court to allow her to subpoena Dr. Howells.  The court rejected the request, stating:

> And all you have got is a letter, and maybe she repeated it to a psychologist or someplace or another.  That didn't prove it one way or the other way.  I think we will get into an endless chain of charges and countercharges by bringing something like that up.  I am going to exclude that under [§] 352 . . . . If you can come up with something more than that, you are welcome to bring it up again.  At this point, I would say no.

That same day, Walia also filed a challenge against the presiding trial judge under California Code of Civil Procedure § 170.6.  The judge denied the motion, concluding that, under the master calendar rule, it was clear that the matter had been properly sent to him and that a challenge to the court's jurisdiction was no longer available because he had already ruled on a contested evidentiary issue.  The judge further stated, "It appears to me, frankly, the only reason this is being filed at this point is just because the defense wants a continuance."

On the morning of December 5, 2006, Lowenstein arrived 35 minutes late to trial.  Walia was not present.  Lowenstein informed the court that he was late because he and Walia had plans to drive to the courthouse together, but that he was unable to contact her and had not yet heard from her.  He stated that, while he was "mostly familiar" with the case, he was "a little bit ill prepared to begin on [his] own" and that Walia had the jury questionnaires regarding potential challenges for cause.  Lowenstein later received a call from Walia, who stated that she had a family emergency in India, had stayed up late the night before speaking with her family, and, due

6

to undue stress and fatigue, had overslept.  Walia stated that she would be at court no later than noon.  The court recessed until 1:30pm.  When court reconvened, the judge found Walia in direct contempt and fined her $250.

The following day, Walia informed the court that Hundal wanted to designate Lowenstein as lead counsel.  The court re-emphasized that it would not allow two defense attorneys questioning the same witness or doing the same job.

When testimony began, Walia objected to the presence of the victim's maternal grandfather as the victim's support person at trial, indicating that he would be called as a witness because "he has been influencing the child."  Walia confirmed that the grandfather had not been subpoenaed as a witness, but that a subpoena could be issued immediately.  The court denied the objection, stating that "[t]his is something that should have been taken care of a long time ago."

At trial, the prosecution introduced, among other items, surveillance videotapes of the Hundal family at the fitness center where a portion of the alleged abuse had occurred and testimony of a police officer who, pursuant to a search warrant, had found adult pornography on Hundal's computer.  The victim and her mother also testified.

The thrust of Hundal's defense was presented through the testimony of expert witness Dr. Demosthenes Lorandos, who testified for the defense on issues of suggestibility and parental alienation.  He additionally opined that a correlation between adult pornography and child molestation was rare.  Hundal did not testify.

Closing arguments were held on December 14, 2006.  After deliberating several days, the jury delivered their verdict on December 20, 2006.  The jury found Hundel guilty of six counts of committing lewd acts upon his daughter.

On January 29, 2007, the court sentenced Hundal to a total of six years in state prison.

Hundal appealed his conviction, arguing that his trial counsel rendered ineffective assistance and that he was deprived of his right to a fair trial when the court denied his request for a continuance and his request to admit Letter No. 1 or Dr. Howells's testimony regarding the victim's prior allegations of sexual abuse.  The appellate court denied his appeal in a reasoned, partially-published opinion issued on November 25, 2008.  *People v. Hundal*, 86 Cal. Rptr. 3d 166 (Cal. Ct. App. 2008).  The appellate court determined that "[t]he record shows that the trial court carefully balanced defendant's rights as a criminal defendant with the right of the People and the victim to a speedy trial" and therefore properly denied the continuance.  The court also rejected Hundal's evidentiary claim, finding that the argument had been forfeited because it was presented without meaningful legal analysis or supporting authority.  Finally, the court rejected Hundal's ineffective assistance claim, finding no evidence that counsel's actions fell below an objective standard of care or prejudiced Hundal's case and was "belied by the fact that Attorney Walia nearly obtained a complete acquittal of her client."

Hundal then petitioned for review to the state supreme court on January 1, 2009, arguing that the appellate court's decision was not based upon the record and was "an unintentional deviation from the facts."  The supreme court summarily denied the petition on March 11, 2009.

Through counsel, Hundal filed a petition for writ of habeas corpus in state superior court on December 10, 2008.  Hundal alleged that, at the time of the trial, Lowenstein or Walia did not disclose to him, the court, or opposing counsel that Lowenstein was also retained by Walia to represent her in a criminal drug prosecution filed against her.  Hundal claimed that Lowenstein's dual representation created an actual conflict of interest that adversely affected counsel's performance.  Hundal additionally alleged, as he had on direct appeal, that he received ineffective assistance of counsel and was deprived of his right to a fair trial after the court denied his request for a continuance and his request to admit Letter No. 1 or Dr. Howells's testimony.

On February 5, 2009, the state superior court ordered the district attorney to file an informal response to Hundal's allegation that Lowenstein's dual representation created a conflict of interest that adversely affected counsel's performance.  On April 7, 2009, the court additionally ordered Hundal and the district attorney to show cause as to:

> Whether petitioner's conviction should be vacated in light of the apparent conflict of interest of one of Petitioner's trial counsel in representing Petitioner's other trial counsel in a drug-related criminal case at the same time as Petitioner's trial and failing to disclose the representation to the Petitioner, the People, or the trial court.

The trial court, including the same judge who had presided over Hundal's trial, held an evidentiary hearing on Hundal's habeas petition on August 17, 2009.  Hundal was represented by counsel who had drafted his state habeas petition.  Lowenstein and Walia were both questioned extensively by the prosecution and defense counsel.

The court denied Hundal's petition on September 7, 2009, concluding:

> The claim that Walia had consumed some alcohol during lunch while in the course of closing arguments is more compelling.  Again, however, this must be viewed against the backdrop that her performance has been found not to be deficient, and it is not her performance that is subject to the conflict of interest analysis.  It cannot be denied that many very effective attorneys feel that alcohol in moderation not only does not

suppress their abilities, it enhances them.  Lowenstein testified that he did not feel that she was intoxicated or under the influence, and that he felt assured that she was not adversely affected by what she drank.  He stated further that he would have informed petitioner if he had thought she was impaired at all.  Walia said she had one shot to calm her nerves and thereby improve her performance.  Regardless of whether Lowenstein had a conflict, it was still not in the best interest of the client to undermine his confidence in Walia at that point.  Lowenstein would not have informed petitioner notwithstanding the conflict, and his failure to do so is not adverse performance by either Walia or Lowenstein.

It is undisputable that the conduct deserving the greatest condemnation here is Lowenstein's and Walia's failure to make full disclosure of the conflict to their client because, whether or not their decisions were prudent, it deprived petitioner of his right to make an informed decision.  While this is reprehensible, there is no evidence that it had any impact on the reliability of the outcome.  There is no evidence that Ms. Walia was ever under the influence of drugs or alcohol while in court.  There is no evidence that any strategic decisions made by the defense were decided under the influence or as the result of substance use despite Lowenstein's suspicions.  The court notes that petitioner was determined to have Ms. Walia conduct his case because of his perception she would gain more sympathy for his cause.  Even after he recognized that Lowenstein's experience made him more effective in achieving procedural advantages, and he substituted Lowenstein as his lead attorney, he still chose Walia to conduct the most critical phases of his defense.  The testimony at this hearing revealed that both she and Lowenstein actually auditioned their performances for petitioner and his supporters to evaluate before choosing who would present the closing argument.  Petitioner decided she was the most effective and chose her to do it.  His decision can hardly be faulted for it resulted in his being acquitted of most of the charges.  Therefore, the court finds there is no adverse effect on counsel's performance that can be attributed to the conflict of interest that existed.

Hundal appealed the denial on April 6, 2010.  The appellate court summarily denied the petition on April 15, 2010.  Proceeding *pro se*, Hundal filed a petition for writ of habeas corpus with the supreme court on June 24, 2010.  He filed supplemental briefing on January 25, 2011, alleging that the prosecution committed a *Batson* violation when it peremptorily challenged the only Hindu Sikh on the jury panel and that counsel were ineffective for failing to object to the challenge at trial.  On February 23, 2011, the supreme court denied the petition without comment.

Hundal timely filed a *pro se* petition for a writ of habeas corpus to this Court on June 8, 2011.  Hundal subsequently retained counsel, who was substituted as attorney of record on November 15, 2011.

## II. GROUNDS/CLAIMS

Hundal asserts five grounds for habeas relief.  First, Hundal claims that he was deprived of his right to counsel due to the conflict of interest presented by Lowenstein's representation of co-counsel Walia in an unrelated matter.  Second, Hundal asserts that his counsel provided ineffective assistance due to: 1) Walia's substance abuse and stress issues; 2) unpreparedness of counsel and consequent motions to continue trial; 3) failure to introduce impeachment evidence regarding the victim's mother; 4) failure to subpoena the victim's maternal grandfather; 5) failure to prevent introduction of adult pornography into evidence; 6) counsel's ineffective and prejudicial closing argument; and 7) counsel's failure to obtain a video expert.  Third, Hundal alleges that he was denied his right to confront and cross-examine the victim witness when the court did not allow defense counsel to subpoena Dr. Howells.  Fourth, Hundal asserts the prosecutor committed a *Batson* violation by peremptorily challenging the only Hindu Sikh on the jury panel.  Finally, Hundal claims that he was denied due process when the superior court denied his petition for writ of habeas corpus without requiring the warden respondent, as opposed to the San Joaquin County District Attorney, to answer the petition or ordering the warden to show cause for his failure to answer.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned

decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's

findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003).

IV. DISCUSSION

Claim One: Co-Counsel Conflict of Interest

Hundal first argues that he was deprived of his right to counsel due to the conflict

presented by Lowenstein's representing Hundal after he had represented co-counsel Walia

against misdemeanor controlled substance charges.  Hundal first addressed this claim to the state

superior court on habeas review, which held an evidentiary hearing on the issue where both

Lowenstein and Walia were questioned extensively by the prosecution and defense counsel.

Following the hearing, the court stated that, while both Walia and Lowenstein "behaved

unethically and reprehensibly in this matter, . . . the criticisms of counsels' decisions raised by

petitioner appear to have nothing to do with the conflict."  Under California law, which applies

the federal standard of review, *People v. Doolin*, 198 P.3d 11, 33-34 (Cal. 2009) (adopting the

federal standard set forth in *Mickens v. Taylor*, 535 U.S. 162 (2002)), the state court therefore

found "no adverse effect on counsel's performance that can be attributed to the conflict of

interest that existed."

"In order to prevail on an ineffective assistance of counsel claim based on [a] conflict of

interest, a defendant must show that 'an actual conflict of interest adversely affected his lawyer's

performance.'"  *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992) (quoting *Cuyler

v. Sullivan*, 446 U.S. 335, 350 (1980)).

Hundal contends that:

> The obvious potential conflict is that Ms. Walia might have been impaired by her
> use of illicit drugs and that such impairment might affect her preparation and
> performance in this case.  Mr. Lowenstein would be bound to her to not reveal her drug
> issues to Petitioner because of his damage to his other client (Ms. Walia).  However, his
> silence in such a matter would preclude him from being completely loyal and committed
> to Petitioner.  A criminal defense lawyer has an absolute duty "[t]o maintain inviolate the

13

confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."

He further asserts that "[t]here can be no doubt that Mr. Lowenstein's split loyalties combined with Ms. Walia's behavior caused an actual conflict of interest in this case." He additionally contends that, "Any prejudice should be presumed as it is too difficult to evaluate whether, absent the conflict, the outcome of the case would have been different."

Although a petitioner who "shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief," *Mickens*, 535 U.S. at 171 (emphasis omitted), Hundal has not demonstrated that there was an actual, rather than potential, conflict of interest. An actual conflict may exist in a case of successive representation if the two cases are substantially related or if the attorney may be required to reveal any privileged communication or otherwise divide his loyalty. *Maiden v. Bunnell*, 35 F.3d 477, 480 (9th Cir. 1994); *Mannhalt v. Reed*, 847 F.2d 576, 583 (9th Cir. 1988). Because the proceedings related to Walia's misdemeanor substance abuse charge "were related only remotely, if at all," to Hundal's sexual abuse case, his "allegations amount to, at best, 'a remote possibility of a conflict and not an actual conflict.'" *See Odle v. Calderson*, 919 F. Supp. 1367, 1383 (N.D. Cal. 1996) (no actual conflict where petitioner's substitute attorney had represented his initial attorney in proceedings to obtain attorney's release from involuntary commitment despite fact that substitute attorney therefore could not disclose to petitioner information regarding initial attorney's mental problems), *rev'd on other grounds*, *Odle v. Woodford*, 238 F.3d 1084 (9th Cir. 2001), (quoting *Bonin v. Calderon*, 59 F.3d 815, 827 (9th Cir. 1995)).

14

Even assuming that Hundal were able to establish an actual conflict, he must still demonstrate that the conflict adversely affected Lowenstein's performance.  After conducting an evidentiary hearing where both Walia and Lowenstein were extensively questioned, the state superior court ultimately determined that the tactical decisions that Hundal criticizes "did not in any way implicate the conflict," and that Lowenstein's failure to disclose to Hundal his representation of Walia or the existence of Walia's substance abuse issues was "not adverse performance by either Walia or Lowenstein."  In light of the evidence in the record, the court's determination that any potential conflict of interest did not result in adverse performance is both reasonable and not contrary to federal law.  *See* 28 U.S.C. § 2254(d)(1).  Accordingly, Hundal is not entitled to relief on his conflict of interest claim.

Claim Two: Ineffective Assistance of Counsel

Hundal next claims his trial counsel team was ineffective due to: 1) alleged stress and substance abuse issues; 2) a lack of preparedness; 3) a failure to introduce evidence to impeach the victim's mother; 4) a failure to subpoena the victim's maternal grandfather; 5) failure to prevent the introduction into evidence of adult pornography; 6) an allegedly-deficient closing argument; and 7) a failure to call a videotape expert.

a.      *Strickland* Standard on Habeas Review

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a

15

reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Hundal must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard. *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam)).

b.      Alleged Stress and Substance Abuse Issues

Hundal contends that Walia was under "significant stress . . . in the months leading up to the trial." He alleges that she was on the verge of bankruptcy, may have been under the influence of methamphetamine, and was facing misdemeanor charges for being under the influence of a controlled substance.

Assuming that Hundal could prove that Walia's judgment was impaired by such stress and substance abuse issues, the focus is on the attorney's conduct, not the source of the alleged shortcomings. *Bonin*, 59 F.3d at 838. If the attorney's performance at trial did not fall below the standard of objective reasonableness, it is irrelevant whether the attorney suffered from stress or used narcotics during trial. *Id.* (citing *Berry v. King*, 765 F.2d 451, 454 (5th Cir. 1985) ("[U]nder *Strickland* the fact that an attorney used drugs is not, *in and of itself*, relevant to an ineffective assistance claim. The critical inquiry is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant."). This Court will therefore address the specific alleged deficiencies, as articulated below.

c.      Lack of Preparedness

Hundal alleges that both Walia and Lowenstein were unprepared for trial, pointing to counsel's multiple attempts to continue the trial as well as their statements supporting the motions for the continuances. Hundal brought this claim on direct appeal, although he raised the argument as to Walia only. The appellate court denied the claim, finding that Hundal's cited instances of incompetence depended:

> not on an objective assessment of Attorney Walia's conduct, but on her own statement declaring a *subjective* perception that she lacked adequate trial skills and her cocounsel's request to complete the cross-examination of the victim. The fact that Walia may have felt uncertain or insecure about her ability to try the case is totally irrelevant,

17

absent a showing that she engaged in actions or omissions that fell below an *objective* standard of care [that] prejudiced her client's case.  In the absence of such a demonstration, the argument fails.

In his Petition, Hundal alleges that counsel's lack of preparedness is demonstrated in their failure to introduce evidence to impeach the victim's mother, their failure to subpoena the victim's maternal grandfather, their failure to prevent the introduction into evidence of adult pornography, Walia's allegedly-deficient closing argument, and their failure to introduce a videotape expert.  Each contention is addressed below.

d.      Failure to Introduce Impeachment Evidence

Hundal contends that his counsel were ineffective for failing to impeach the victim's mother using Letter No. 1 and Letter No. 2.  Hundal brought this claim in his habeas petition to the state supreme court, which the supreme court denied without articulating reasons.

Hundal cannot demonstrate, however, that the trial court would have allowed the letters into evidence.  At trial, the court excluded Letter No. 1, finding it more prejudicial than probative and thus inadmissible under California Evidence Code section 352.  Hundal contends that counsel would have nonetheless been able to introduce Letter No. 1 through impeachment of either the victim or her mother.  But under California law, evidence introduced for impeachment purposes is still subject to the confines of section 352.  *See, e.g.*, *Winfred D. v. Michelin N. Am., Inc.*, 81 Cal. Rptr. 3d 756, 771 (Cal. Ct. App. 2008) (holding that court committed reversible error where it allowed over § 352 introduction of plaintiff's extramarital affairs to contradict testimony at deposition because affairs were irrelevant to matter and "[t]o the extent the evidence was relevant to . . . credibility," impeachment on collateral matter was more prejudicial than probative).

Moreover, the record indicates that defense counsel attempted to impeach the mother by asking her about the incident described in the letters.  At trial, Lowenstein asked, "Have you ever reported, made reports of anyone else trying to sexually be inappropriate with [the victim] other than [Hundal]?"  The court did not allow that line of questioning, as will be further discussed in assessing claim three below.  Hundal therefore cannot demonstrate that counsel's failure to introduce the letters as impeachment evidence prejudiced his case because he cannot show that the trial court would have admitted the letters and Lowenstein attempted to impeach the mother by asking her about the contents of the letter.  Accordingly, Hundal cannot prevail on this claim.

  e.  Failure to Subpoena the Victim's Maternal Grandfather

Hundal further contends that counsel were unable to timely subpoena the victim's grandfather because they were unprepared for trial.  Hundal asserts that the grandfather would have been asked about negative statements he made about Hundal "with the point being that his irrational hostility toward Mr. Hundal and his competitive nature was pressuring his daughter and granddaughter to turn against Mr. Hundal."

Contrary to Hundal's assertion, the record indicates that Walia's decision to not subpoena the grandfather was a tactical one, rather than one fueled by lack of preparation.  During the evidentiary hearing on habeas review, Walia testified that counsel discussed calling the grandfather as a witness, but ultimately concluded that he would "talk more bad things than good.  That his testimony would do no good."  The record demonstrates that counsel considered whether to subpoena the grandfather but ultimately decided against it; as such, the decision was a tactical one that this Court may not second guess.  *Strickland*, 466 U.S. at 690-91.  Hundal is therefore not entitled to relief on this claim.

f.      Failure to Prevent the Introduction into Evidence of Adult Pornography

Hundal additionally alleges that his counsel were ineffective for failing to prevent the

introduction of adult pornography found on Hundal's computer.  Hundal claims:

> The court, following its introduction, indicated that the court would have excluded any reference to the data pursuant to [Evidence Code section] 352 had the defense made such a motion in limine at the outset [of] trial.  However, both Ms. Walia and Mr. Lowenstein denied knowing that such information was found on the computer despite being provided in the discovery by the prosecution.  By not properly reviewing the discovery provided to her, Ms. Walia allowed extremely prejudicial evidence to enter the case.

On direct appeal of his conviction, the appellate court denied Hundal's claim, concluding

that:

> [D]efendant does not present a convincing argument that the disclosure of adult pornography played a crucial role in the jury's verdict.  As the prosecutor correctly noted during an exchange outside the presence of the jury, the adult pornography discovery was relevant to the crucial issue of [the victim's] credibility, since she had told interviewers that she had seen images of adults wearing bras and panties on her father's computer. Although the trial judge speculated that, had an appropriate motion been made, he might have excluded the evidence as more prejudicial than probative, he also remarked that it "isn't a big deal."  And any prejudice from the disclosure was significantly diminished when defense expert Dr. Lorandos testified that child molesters "very rarely" look at adult pornography.

The record therefore demonstrates that the appellate court reasonably concluded that the

trial court might not have excluded the evidence even if Hundal's counsel had moved to exclude

it and, in any event, counsel's failure to move to exclude the evidence did not prejudice Hundal's

case under *Strickland*.  Accordingly, the state court's decision was not "contrary to" and did not

involve "an unreasonable application of, clearly established Federal law," § 2254(d)(1), and was

not "based on an unreasonable determination of the facts in light of the evidence presented," §

2254(d)(1).  Hundal is therefore not entitled to relief on this claim.

g.       Allegedly-Deficient Closing Argument

Hundal also contends that Walia's closing argument was "ineffective and prejudicial."

Hundal raised the same arguments in support of his claim on direct appeal, which the appellate

court denied:

> Defendant also finds fault with Attorney Walia's closing argument.  As best we
> can discern, the criticisms are: that she did not adequately weave Dr. Lorandos's expert
> testimony regarding Parental Alienation Syndrome into her summation; that she
> "undermined" the defense strategy by saying, "This is a very high-conflict divorce.  *And
> needless to say, which divorce isn't*" (italics added); and that Walia "testifie[d] against
> her client" by speculating as to what might have happened in the bathroom when
> defendant checked [the victim's] underwear and bathing suit.
>
> We have carefully reviewed counsel's closing argument and find no ineffective
> assistance.  On the contrary, Attorney Walia gave a rational, even persuasive argument in
> favor of her client's innocence.  She effectively attacked [the mother's] credibility, citing
> her admission of perjury and strong motive to prompt [the victim] to fabricate allegations
> of sexual abuse in order to gain full custody of her daughter.  She noted that [the victim]
> was susceptible to brainwashing, since she did not like being in her father's strict
> household, and preferred living with her mother.  Counsel also cast doubt on [the
> victim's] credibility, pointing out that her testimony sounded rehearsed and that she
> "cri[ed] on cue" when being cross-examined.  Walia portrayed her client as "[a] man who
> has raised his kids as a single father doing the best that he can," who was being
> victimized simply because he helped his daughter with the fitting of her bathing suit and
> undergarments.  Defendant's claim that counsel "argued against her client" is patently
> ridiculous.

A defense attorney's conduct in closing argument can only be the grounds for a writ of

habeas corpus if his performance fell below an objective standard of reasonableness.  *Strickland*,

466 U.S. at 688; *see also Bell v. Cone*, 535 U.S. 685, 701-02 (2002) (right to effective assistance

extends to closing arguments).  The Supreme Court has cautioned, however, that it is difficult to

determine that a defense attorney has not provided effective assistance in final argument:

> [C]ounsel has wide latitude in deciding how best to represent a client, and
> deference to counsel's tactical decisions in his closing presentation is particularly
> important because of the broad range of legitimate defense strategy at that stage . . . .
> Judicial review of a defense attorney's summation is therefore highly deferential–and
> doubly deferential when it is conducted through the lens of federal habeas.

*Yarborough*, 540 U.S. at 5-6.

The record supports the appellate court's conclusion that Walia's tactics in closing argument were reasonable, given the nature of the evidence introduced at trial. Hundal fails to demonstrate that the state court's decision was unreasonable or contrary to federal law. 28 U.S.C. § 2254(d). Accordingly, Hundal was not denied the effective assistance of counsel in final argument.

h.      Failure to Call a Videotape Expert

Finally, Hundal claims that Walia was ineffective for failing to retain a videotape expert who could "explain the difficulty of accurately determining what took place" on the surveillance video that purported to show Hundal acting inappropriately toward his daughter in a health club pool and hot tub. Hundal presented this claim in his habeas petition to the state supreme court, which was summarily denied.

During the evidentiary hearing the superior court held on habeas review, Walia testified that she consulted with Lowenstein and the defense's expert witness about securing a videotape expert. She further testified that she did not believe there was a reason to obtain an expert because Hundal admitted it was him on the tape with his daughter. Counsel therefore decided not to obtain an expert.

The record therefore demonstrates that Walia had considered the use of a videotape expert but made a tactical decision against it. Hundal fails to show that her decision fell outside the "wide range" of competent assistance or that, but for Walia's failure to retain a videotape expert, the outcome would have been different. *Strickland*, 466 U.S. at 690, 694; *see also Raley v. Ylst*, 470 F.3d 792, 801 (9th Cir. 2006) (holding that a strategic decision not to call an expert

will not constitute ineffective assistance of counsel if that choice was reasonable under the circumstances).  Hundal therefore cannot prevail on this ineffective assistance claim.

Claim Three: Right to Confront and Cross-Examine Witness

Hundal next claims that the trial court committed reversible error when it rejected defense counsel's request to subpoena Dr. Howells with regard to the contents of Letter No. 1. The court ruled that Letter No. 1 was inadmissible under California Evidence Code § 352, which grants courts discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  The court also rejected defense counsel's request to subpoena Dr. Howells, a clinical psychologist at the University of the Pacific, to whom the mother had allegedly repeated the allegations in the letter.  The court stated:

> And all you have got is a letter, and maybe she repeated it to a psychologist or someplace or another.  That didn't prove it one way or the other way.  I think we will get into an endless chain of charges and countercharges by bringing something like that up.  I am going to exclude that under [§] 352 . . . .  If you can come up with something more than that, you are welcome to bring it up again.  At this point, I would say no.

The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly,

limiting them to specific guarantees enumerated in the Bill of Rights. *Estelle*, 502 U.S. at 73

(citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him . . . ."  U.S. CONST. amend. VI.  It is well settled that, under the Sixth Amendment, an

accused has the right to present witnesses, testimony and other evidence in his defense.  *See*

*Washington v. Texas*, 388 U.S. 14, 19 (1967).  However, "[t]he accused does not have an

unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible

under standard rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988).  States have

considerable latitude under the Constitution to establish rules excluding evidence from criminal

trials.  *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006).  "Thus, a trial judge may exclude or

limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the

issues, or misleading the jury.  The trial judge enjoys broad latitude in this regard, so long as the

rulings are not arbitrary or disproportionate."  *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th

Cir. 2005) (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due

process rights are not violated by exclusion of relevant evidence where probative value is

outweighed by danger of prejudice or confusion).

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code

section 352, permits the exclusion of evidence if its probative value is "substantially outweighed

by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence."  "A district court is accorded a

wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing

the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ." *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009). California employs a similar rule. *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

Under these guidelines, this Court cannot find that the trial court's denial of Hundal's request to subpoena Dr. Howells was an abuse of discretion or unreasonable or contrary to federal law. The clinical psychology report prepared by Dr. Howells[2] indicates that the mother stated during an interview with Dr. Howells that "she is concerned that about [sic] the brother-in-law of [Hundal] . . . and fears that he displays a tendency to behave inappropriately towards her daughter." Such innocuous statement is insufficient to warrant compelling Dr. Howells's testimony, particularly given that there is insufficient evidence in the record to discern exactly what Dr. Howells was told. *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983) ("Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process.").

This Court is more troubled, however, by the trial court's refusal to allow defense counsel to question the victim's mother about the allegations at all. While addressing motions in limine, the court had the following exchange with defense counsel:

---

[2]     On September 5, 2013, this Court ordered the parties to lodge with the Court copies of Letter No. 1 and Letter No. 2 as well as the clinical psychology report prepared by Dr. Howells, which were included as exhibits to Hundal's habeas petition filed with the San Joaquin County Superior Court on December 10, 2008. Docket No. 28. On September 16, 2013, Respondent provided the requested documents. Docket No. 29.

MR. LOWENSTEIN:          Under 352, question Number 1 just on that one particular, are we, at least, allowed to cross-examine her on the one question?  Ask her if it is so.

. . .

THE COURT:          If what is so, whether the Defendant's brother molested her?

MR. LOWENSTEIN:          No.  Whether she, the mother, ever reported it or if she maintains it.

MS. WALIA:          Whether she told the child this.  The child raised notions of sexual abuse about inappropriate behavior, not sexual in a sexual way.  It goes to the credibility of the mother.  Do you just randomly accuse people of things like this?  It goes to credibility.

THE COURT:          There is no doubt you are entitled to ask mom, did you put [the victim] up to this?  Did you do anything to suggest to her that she had been improperly treated.  And you are entitled to ask [the victim], did mom ever suggest to you, I am sure you can word it a lot better than I can.  Did [the victim] ever suggest, did mom ever suggest to you that dad here improperly touched her?  You are sure entitled to ask those questions.  The trouble is you are going to get denials is what you will get.

While conducting cross-examination of the victim's mother, defense counsel attempted to ask, "Have you ever reported, made reports of anyone else trying to sexually be inappropriate with [the victim] other than [Hundal]?"  The court sustained the prosecution's objection and did not allow that line of questioning.

While the Court believes it is a very close question whether Hundal's confrontation right was violated by the refusal to allow defense counsel to question the mother about the prior allegation, the Court ultimately must conclude that Hundal is not entitled to relief for any alleged violation.  First, Hundal's Petition asserts a confrontation violation only with respect to the trial court's denial of Hundal's request to subpoena Dr. Howells, which this Court has already rejected.  Moreover, when Hundal brought this claim on direct appeal, the appellate court

26

construed it as "consist[ing] of a brief discussion of the relevance of the evidence, paired with the conclusory assertion that the trial court abused its discretion."  The appellate court consequently deemed the argument forfeited under California law as an "[a]rgument[] presented without meaningful legal analysis or citation to apposite authority."  The appellate court's denial is therefore an independent and adequate state ground that precludes federal habeas review.  *Cone v. Bell*, 556 U.S. 449, 465 (2009) ("[C]onsistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.").  Hundal is therefore not entitled to relief for any alleged confrontation rights violation.

Claim Four: Alleged *Batson* Violation

Hundal additionally claims that he was prejudiced by the prosecutor's use of a peremptory challenge to remove the only Hindu Sikh from the jury panel solely based on racial bias.  Hundal raised this claim in his supplemental brief to his habeas petition to the state supreme court, which was summarily denied.

The Equal Protection Clause prohibits purposeful racial discrimination in the selection of the jury.  *Batson v. Kentucky*, 476 U.S. 79, 86 (1986).  In *Batson*, the Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause: 1) a defendant raising a *Batson* claim must establish a *prima facie* case of discrimination; 2) once a *prima facie* case of discrimination is established, the burden of offering race-neutral reasons for the strikes shifts to the prosecutor; 3)

after the prosecutor offers race-neutral reasons, the trial court has the duty to determine if the defendant has established purposeful discrimination. *Paulino v. Harrison*, 542 F.3d 692, 699 (9th Cir. 2008) (citing *Batson*, 476 U.S. at 98).

Hundal's failure to raise the *Batson* issue during trial resulted in a trial record that is not sufficiently developed to support an evaluation of the jury selection practice under *Batson*. *See Sledd v. McKune*, 71 F.3d 797, 799 (10th Cir. 1995) (where no *Batson* objection was made at trial, "there is no basis for us to review the peremptory challenge"). Here, because Hundal did not object, no analysis of the prosecutor's reason for the strikes is possible because the prosecutor had no reason to believe such reasons were necessary and therefore did not provide any. Accordingly, because Hundal failed to timely object, he has forfeited his *Batson* claim. *United States v. Contreras-Contreras*, 83 F.3d 1103, 1104-05 (9th Cir. 1996) (holding that a defendant forfeits a *Batson* claim if the defendant fails to make a timely objection to the prosecution's assertedly discriminatory use of peremptory challenges).

Assuming, however, that Hundal's failure to object is not fatal to his claim, Hundal cannot even make a *prima facie* showing of purposeful discrimination sufficient to establish a *Batson* violation. To successfully challenge a peremptory strike, a party must set forth a "*prima facie* case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 93-94. Hundal supports his claim with the bare assertion that the prosecution used a peremptory challenge to strike the only Hindu Sikh on the jury panel. He has failed to provide a single other reason, statistical or otherwise, to justify his claim of a discriminatory strike. Because there is a complete absence of

support for Hundal's *Batson* claim, Hundal has failed to establish a *prima facie* showing of purposeful discrimination.

His companion contention that trial and appellate counsel were ineffective for failing to object to and argue that the prosecutor violating *Batson* by using a peremptory strike to remove the juror at issue similarly must fail because of the lack of *a prima facie* showing of purposeful discrimination.  While failure to lodge a *Batson* challenge may constitute ineffective assistance of counsel, to prevail on such a claim, courts require that a petitioner show "some likelihood that a more favorable result" would have been achieved at trial or on appeal if trial or appellate counsel had raised the issue.  *Davis v. Sec'y for Dep't of Corr.*, 341 F.3d 1310, 1314 (11th Cir. 2003); *see also Young v. Bowersox*, 161 F.3d 1159, 1160-61 (8th Cir. 1998).  Because Hundal could not establish a *prima facie* showing, Hundal cannot establish that defense counsel acted incompetently either at trial or on appeal, and thus Hundal cannot demonstrate prejudice.  *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim).  Accordingly, Hundal cannot prevail on his *Batson* claims.

<u>Claim Five: Warden's Failure to Answer State Court Habeas Petition</u>

Finally, Hundal asserts that the state superior court violated his right to due process when, in considering his habeas petition filed in that court, it issued an order to show cause to the local district attorney rather than to the warden of the prison in which he was in custody.  He claims that because the federal habeas statute expressly states that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]," 28 U.S.C. § 2242, the

proper respondent should have been the warden.  *See also Rumsfeld v. Padilla*, 542 U.S. 426, 434-36 (2004).

As Respondent notes, Hundal did not present this argument in either his direct appeal of his conviction or in his habeas petitions filed in the state courts.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  To have properly exhausted his state court remedies, Hundal must have presented both the legal arguments and the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003).  Hundal does not address this ground at all in his Traverse and thus does not argue that this claim was properly exhausted.  Unexhausted claims must be dismissed.  *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).

However, this Court need not rely on this basis as it may deny the petition on the merits notwithstanding the lack of exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  The California Rules of Court provide that, on habeas review, a court may request an informal written response from the respondent, the real party in interest, or an interested person before ruling on the petition.  CAL. RULES OF COURT, rules 4.551(b)(1), 8.385(b)(1).  Because the district attorney to whom the court directed order to show cause had prosecuted Hundal, the district attorney may properly be viewed as either a party in interest or an interested party within the meaning of the

court rules.  Accordingly, the superior court did not err in ordering the district attorney to show cause, and Hundal is therefore not entitled to relief on this ground.

V. CONCLUSION AND ORDER

Hundal is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: October 2, 2013.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge